# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9096 | **DATE** | 4/26/2004 |
| **CASE TITLE** | Traci Wilkening vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. The court affirms the Commissioner's final decision. The Commissioner's motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 27 2004 | |
| | Notified counsel by telephone. | | date docketed | 22 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/26/2004 | |
| | | | date mailed notice | |
| IS | courtroom deputy's initials | | IS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **TRACI WILKENING,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 9096 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **JO ANNE B. BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

APR 2 7 2004

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Traci Wilkening seeks judicial review of the final decision of the Commissioner of Social Security in which the Commissioner declined to waive Plaintiff's obligation to refund disability benefit overpayments. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a).

Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security seeks to reverse the decision on two grounds: (1) that the Commissioner failed to prove the existence of an overpayment to Plaintiff or its amount, and (2) that Plaintiff was not at fault in causing the overpayment. In the alternative, Plaintiff seeks remand to the ALJ to hear additional evidence on the amount of overpayment and the issue of fault. For the reasons set forth below, the Court affirms the final decision of the Commissioner.

22

## I.  Background Facts and Procedural History

### A.  Plaintiff's Background and Medical History

Plaintiff was born on July 29, 1970, and was thirty years old on the date of her hearing before the Administrative Law Judge ("ALJ"). (R. at 22, 97.) Plaintiff obtained a GED in 1987. (R. at 13.) She also studied English and Psychology at Elgin Community College in 1992, but did not finish her coursework. (Id.) However, Plaintiff did complete and pass two classes. (Id.)

Plaintiff was diagnosed with bipolar disorder in 1990 and began receiving disability benefits in October of that year. (R. at 13, 189.) In addition, the record suggests that Plaintiff may also have suffered from depression, (R. at 13), and occasional bouts of substance abuse. (R. at 104.) She has been prescribed and has taken medication that included Lithium, Xanax, and Risperdal, although she did not take these medications continually. (R. at 13.) Plaintiff worked off and on at various jobs after she began receiving benefits, including The Message Center and First Card in Elgin, Illinois. (R. at 89-91, 120-22.)

### B.  Plaintiff's Eligibility for Disability Benefits

Plaintiff's trial work period[1] began running in November 1990 and ended in April 1992. (R. at 113.) Her extended period of eligibility[2] then ended in October 1995. (R. at 99.) Plaintiff

---

[1] Ordinarily a person is not entitled to disability benefits, regardless of impairment, if she works at substantial gainful activity. 42 U.S.C. § 423(e). The trial work period provides an exception during which time beneficiaries may test their ability to work. 42 U.S.C. § 422(c); 20 C.F.R. § 404.1592. During this non-consecutive nine-month period, a beneficiary may work at substantial gainful activity while still receiving disability benefits. Id.

[2] The extended period of eligibility, or reentitlement period, is an additional three years during which the beneficiary may work without having her benefits completely terminated. 42

(continued...)

worked during portions of her extended period of eligibility, specifically from October 1993 through December 1994. (R. at 114-15.) Accordingly, she was not entitled to payments she received during those months. (Id.) Moreover, as of November 1995 (the first month following the close of her extended period of eligibility) Plaintiff was no longer entitled to any benefits at all. (Id.) However, she continued to receive payments. (R. at 171, 189.) Plaintiff did not notify the Social Security Administration ("SSA") of her receipt of these payments. And according to SSA records, Plaintiff did not regularly or timely notify the SSA of her work activity until she filed a written report on June 30, 1997. (R. at 76, 82-83, 191.) Yet even after Plaintiff reported her work activity, the SSA failed to terminate her benefits, continuing to pay Plaintiff until March 1999. (R. at 171, 189.)

### C.    Overpayments on Behalf of Plaintiff's Children

While ineligible for benefits, Plaintiff accepted overpayments both personally and on behalf of two of her children, Samantha Wilkening and Christopher Huber. (R. at 22.) The overpayments made to Plaintiff on behalf of her children eventually totaled $9060. (R. at 136, 140.) However, these overpayments are not at issue. Plaintiff's mother, Bonnie Wilkening, took both children into her custody in September 1996 and began receiving the overpayments made on their behalf in March 1998. (R. at 154.) Upon Bonnie Wilkening's request, the SSA ultimately

_____

(...continued)
U.S.C. § 423(e); 20 C.F.R. § 404.1592a. During this three-year period, the beneficiary will not be paid benefits for those months during which she works at substantial gainful activity. 20 C.F.R. § 404.1592a. However, the SSA will pay benefits for any months during the extended period of eligibility in which the beneficiary does not work at substantial gainful activity. *Id.* After the extended period of eligibility has ended, a beneficiary's disability payments will be completely terminated if she continues to work at substantial gainful activity at any time. *Id.*

waived recovery of the overpayments made to the children. (R. at 178-81.) Accordingly, only the overpayments Plaintiff received remain at issue. (R. at 22-23.)

**D.     The First Notice of Overpayment and Plaintiff's Requests for Waiver**

Plaintiff received two written notices of overpayment from the SSA. The first of these notices referred only to the overpayments made to Plaintiff on behalf of her children. (R. at 37-46.) This notice, which is undated, quoted a total combined overpayment of $7535.40. (Id.) Plaintiff apparently received the notice in early 1996, because on February 29, 1996, Plaintiff filed the first of three requests for waiver of overpayment with the SSA. (R. at 47.) When the SSA did not respond to her initial request, Plaintiff filed a second on May 16, 1996, then a third on March 5, 1997. (R. at 55, 65.) The SSA finally replied to these waiver requests on June 19, 1997, rejecting the requests and communicating its decision to Plaintiff by a letter dated September 20, 1997. (R. at 75-78.) This letter informed Plaintiff that the SSA was arranging a personal conference at which Plaintiff could review her file and meet with a claims representative before the SSA made its final decision to deny waiver. (R. at 77.)

**E.     Plaintiff's July 5, 1996 Disability Determination and Medical Review**

Before attending the personal conference, Plaintiff received a medical review from state examiners at the behest of the SSA on July 5, 1996. (R. at 101-11.) The examining doctor concluded that Plaintiff's bipolar disorder still qualified as a listed disability. (R. at 101.) Thereafter, the SSA sent Plaintiff a letter informing her that she still met the disability requirements and stating that her "status as a Social Security beneficiary is unchanged." (R. at

- 4 -

190.) However, the same letter informed Plaintiff that she must report any changes in her work status and reiterated that her trial work period had ended. (Id.)

**F.      The Dismissal of Plaintiff's Initial Request for Administrative Review**

Four months after the medical review, on November 19, 1997, Plaintiff attended the personal conference with a claims representative from the SSA. (R. at 81-82, 95.) At this conference, the claims representative again refused waiver of overpayment. (R. at 95.) The claims representative also noted that "[Plaintiff] is now again working and termination needed." (R. at 81.) Yet the SSA again failed to terminate Plaintiff's payments.

Plaintiff then requested a hearing before an ALJ. (R. at 93.) The ALJ attempted to hold the hearing three times before dismissing Plaintiff's request. (R. at 134.) Plaintiff failed to appear at the first scheduled date of August 27, 1998, because of her involvement in an automobile accident that same day. (Id.) Instead of appearing at the second scheduled date of October 27, 1998, she received a continuance until December 10 so that she could obtain counsel. (R. at 18-19, 134.) When Plaintiff missed the December 10 date, the ALJ dismissed her request for a hearing on January 6, 1999. (R. at 135.)

**G.      The Second Notice of Overpayment and the Administrative Hearing**

For six months thereafter, Plaintiff's case fell by the wayside. She stopped receiving payments in March 1999 and did not refund any money to the SSA. (R. at 171, 189.) Eventually, the SSA sent Plaintiff a second notice of overpayment. Though the record contains no copy of this second notice, a "Master Beneficiary Record" generated from SSA computer

records indicates that the SSA sent this second notice on July 27, 1999. (R. at 177.) That date places the notice nearly two years after the personal conference and six months after Plaintiff's first request for an administrative hearing was dismissed. By this time Plaintiff's payments totaled $29,280.10. (Id.)

Plaintiff then filed renewed requests for waiver or reconsideration. The record contains no SSA initial determination either granting or rejecting these renewed requests. Nevertheless, Plaintiff filed a request for a hearing on April 21, 2000. (R. at 182.) The ALJ held the hearing on December 14, 2000. (R. at 22.) At this hearing, counsel for Plaintiff agreed with the SSA's assertion that Plaintiff had been overpaid in the amount of $29,280.10. (R. at 23, 184.) Counsel obtained this figure from a "waiver determination" generated from Plaintiff's Master Beneficiary Record. (R. at 189, 172-77.) The Master Beneficiary Record, a printed tabulation and record of the overpayment in each monthly installment, shows the overpayment amount of $29,280.10. (R. at 77.) As Plaintiff points out, however, the abbreviations and codes interspersed throughout the Master Beneficiary Record render much of it indecipherable. Regardless, Plaintiff did not object to the figure, and the ALJ found that she had been overpaid benefits in that amount. (R. at 23.)

At the hearing, Plaintiff testified that she did not understand the relationship between employment and benefit eligibility. (R. at 25, 31-32.) She said that the SSA's handling of her case confused her and caused her to believe that she was receiving benefits to which she was entitled. (R. at 31.) In particular, Plaintiff told the ALJ that the letter following her July 5, 1996 medical review confused her into thinking she was eligible. (Id.) Because of the medical review's finding of continued disability, Plaintiff assumed she was entitled to the payments she

- 6 -

subsequently received. (Id.) She also testified at length about her impairments, stating she suffered from depression in addition to her bipolar disorder. (R. at 13, 31.) The medical review supports that testimony. (R. at 104.) Plaintiff testified that she stopped taking her prescription medication because she felt better at times. (R. at 33.)

The ALJ ruled against Plaintiff and denied waiver of the overpaid disability benefits. (R. at 14-15.) Following the ruling, Plaintiff appealed to the SSA Appeals Council, which declined further review. (R. at 4-5.) Accordingly, the ALJ's decision became the final decision of the Commissioner, which Plaintiff now appeals to this Court pursuant to 42 U.S.C. § 405(g).

### III. **Discussion**

The SSA must seek a refund from a person who has mistakenly received an overpayment of disability benefits. 42 U.S.C. § 404(a); *Heins v. Shalala*, 22 F.3d 157, 159 (7th Cir. 1994). However, the SSA may not recover an overpayment from the recipient where: (1) the recipient was not at fault in causing the overpayment, and (2) recovery would either defeat the purposes of Title II of the Social Security Act or otherwise be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506. Therefore, if the recipient was at fault in causing the overpayment, the ALJ's inquiry is at an end. *Heins*, 22 F.3d at 163 n.2. The ALJ need not proceed to the second element of the two-pronged test for waiver of overpayment.[3] *Id.*

--------------------------------------------------

[3] Conversely, if the recipient was not at fault, the ALJ must consider the second element: whether recovery of the overpayment would defeat the purposes of the Social Security Act or be against equity and good conscience. *Banuelos v. Chater*, 974 F. Supp. 652, 656 (N.D. Ill. 1997). Recovery defeats the purposes of the Act when it "deprives a person of income required for ordinary and necessary living expenses," depending on the income and financial resources of the recipient. 20 C.F.R. § 404.508; *Banuelos v. Apfel*, 165 F.3d 1166, 1169 (7th Cir. 1999),
(continued...)

The ALJ's decision listed three findings: (1) the claimant was overpaid benefits in the amount of $29,280.10; (2) the claimant was not "without fault" in causing and receiving the overpayment; (3) recovery of the overpayment is not waived. (R. at 14.) Because the ALJ determined that Plaintiff was at fault, he did not consider whether repayment would violate the purposes of Title II or be against equity and good conscience.

Plaintiff attacks these findings. She first disputes the existence and amount of the overpayment, arguing that the ALJ's finding of a $29,280.10 total amount has no support in the record. In response, the Commissioner asserts that Plaintiff waived review of the existence and amount of overpayment by failing to raise the issues administratively.

Second, Plaintiff disputes the ALJ's finding that she was not at fault in causing the overpayment. Specifically, she argues that the ALJ improperly rejected her testimony regarding her ability to understand the effect of earnings on disability eligibility in light of her impairment. The Commissioner argues that the finding has ample support in the record and that the ALJ properly considered all the evidence before rejecting Plaintiff's testimony as incredible.

## A.     Standard of Review

In all cases reviewing the final decision of the Commissioner, the reviewing court will uphold the ALJ's decision where supported by substantial evidence. Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

---

(...continued)
*overruled on other grounds in Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). Alternatively, recovery may be against equity and good conscience when the recipient has changed position to her detriment based on the receipt of the overpaid funds. *Banuelos*, 165 F.3d at 1171.

*Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's finding must be supported by more than a scintilla of evidence but may be supported by less than the full weight of the evidence. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986). The reviewing court must consider all evidence on the record; however, it may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ, because the ALJ must resolve all factual issues and evidentiary conflicts. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993); *Delgado*, 782 F.2d at 82. Therefore, the critical question for this Court is not whether Plaintiff is entitled to waiver, nor the total amount of her overpayment, but whether there is substantial evidence in the record to support the Commissioner's findings on these issues. If reasonable minds could disagree on those findings, we must affirm the ALJ's decision. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

### B.    The Existence and Amount of Overpayment

Plaintiff disputes the ALJ's finding that she received an overpayment in the amount of $29,280.10. Plaintiff does not offer any evidence or argument to suggest that she never received any overpayments. Nor has she offered any evidence to show that she received a lesser amount. Rather, Plaintiff argues that the evidence did not support the ALJ's finding and urges the Court to remand for an additional hearing on the matter. However, the Commissioner argues that Plaintiff waived the issue because she failed to raise it before the ALJ.

Initially, the Court notes that the burden of proving the existence and amount of Plaintiff's overpayment rests with the Commissioner. *See Napier v. Apfel*, No. 98 C 6826, 2000 WL 44864,

at *4 n.5 (N.D. Ill. Jan. 3, 2000). The Act does not specify which party must carry the burden of proving the existence of an overpayment. *See* 42 U.S.C. § 404; *Chitwood v. Chater*, 928 F. Supp. 874, 880 (E.D. Mo. 1996). Nor has the Seventh Circuit directly addressed the issue. However, other circuit courts that have addressed the issue agree that the Commissioner must bear the burden of proving the existence of an overpayment and its amount. *See e.g., McCarthy v. Apfel*, 221 F.3d 1119, 1125 (9th Cir. 2000); *Cannuni v. Schweiker*, 740 F.2d 260, 263 (3rd Cir. 1984); *Burrow v. Finch*, 431 F.2d 486, 491 n.5 (8th Cir. 1970). It makes little sense to allow the Commissioner to allege that Plaintiff has received overpayments and then force Plaintiff to prove the negative. *See Burrow*, 431 F.2d at 491 n.5. After all, the Commissioner, after discovering an alleged overpayment, is in the best position to demonstrate the amount of that overpayment. Plaintiff now argues that the Commissioner failed to carry this burden.

However, a reviewing court will not decide issues that were not raised administratively.[4] *Banuelos v. Apfel*, 165 F.3d 1166, 1170 (17th Cir. 1999), *overruled on other grounds in Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). In *Banuelos*, the plaintiff argued to the ALJ that he was entitled to a waiver of overpayment. 165 F.3d at 1168. He did not challenge the underlying existence or amount of his overpayment before the ALJ. *Id.* at 1170. Therefore, when plaintiff tried to raise these issues on appeal, the court held that he had waived both issues because he failed to present them to the ALJ. *Id.*

---

[4] A claimant need not develop and preserve an issue on appeal to the Appeals Council, which exercises very limited review. *See Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999). The claimant need only present issues to the ALJ to avoid waiver. *Id.* at 562 (citing *Brewer v. Chater*, 103 F.3d 1384, 1393 (7th Cir. 1997)).

The Commissioner argues that Plaintiff completely waived any review of the existence and amount of overpayment because she failed to raise these issues before the ALJ. However, Plaintiff did file a request for reconsideration of the amount of overpayment. *See id.* at 1168. Plaintiff filed this request on September 28, 1999, well before her administrative hearing. (R. at 166.) That request was the proper mechanism for challenging the initial determination that an overpayment was made in the amount of $29,280.10. *See* 20 C.F.R. § 404.907. Moreover, the ALJ addressed the existence and amount of overpayment separately from the issue of fault, asking "whether the claimant was overpaid benefits," and, if so, "whether recovery of the overpayment may be waived." (R. at 12.) The ALJ then made two separate findings: first that Plaintiff was overpaid in the amount of $29,280.10, and second that Plaintiff was not "without fault." (R. at 14.) Plainly the issue of whether Plaintiff received overpayments, and how much, was in front of the ALJ, who made an explicit finding on these issues. Thus this Court has the obligation to review both issues. The Court must reverse if substantial evidence does not support the $29,280.10 figure.

Plaintiff argues that the Commissioner failed to carry the burden of proof and that the ALJ's finding of a $29,280.10 overpayment does not have substantial support in the record. She first points out that the ALJ's decision makes little reference to the overpayment issue. (R. at 11-15.) The decision does not expressly consider the evidence nor explain how the ALJ arrived at the $29,280.10 figure. (Id.) And Plaintiff correctly states that the ALJ made no reference to any notice that specifically sets forth a $29,280.10 overpayment. Instead, the decision simply cites to the waiver determination supplied to Plaintiff's counsel. (R. at 14; 188-89.)

That waiver determination, based on the Master Beneficiary Record, sets forth the

- 11 -

$29,280.10 figure and Plaintiff did not challenge its authenticity or accuracy at her hearing in front of the ALJ. The Master Beneficiary Record also states that notice was mailed to Plaintiff on July 27, 1997, (R. at 177), but the record does not contain this notice. Plaintiff argues that without a copy of a notice stating that she owed $29,280.10, the ALJ's reliance on the waiver determination and Master Beneficiary Record was improper.[5]

These deficiencies are not fatal because Plaintiff's representations at the hearing entitled the ALJ to rely exclusively on the waiver determination and Master Beneficiary Record. Although she did not waive the issue in its entirety, Plaintiff did not contest the issue of overpayment before the ALJ; specifically, she did not attack the credibility or accuracy of either document. In fact, Plaintiff, through her counsel, agreed with the figure stated in the waiver determination and Master Beneficiary Record. (R. at 23.) Thus the ALJ's conclusory treatment of the overpayment issue was not legal error; to hold otherwise would require the ALJ to disregard stipulated facts.

The Seventh Circuit addressed an analogous situation in *Donahue v. Barnhart*, 279 F.3d 441 (7th Cir. 2002). At issue was the plaintiff's ability to find gainful employment, which would disqualify him from benefits. *Id.* at 443. The ALJ relied on the testimony of a vocational expert when deciding to deny benefits. *Id.* at 444. Although this expert testimony contradicted the Department of Labor's Dictionary of Occupational Titles, the plaintiff failed to cross-examine the expert or point out this contradiction in front of the ALJ; thus the appeals court held that the ALJ properly relied on the expert's testimony. *Id.* at 446-47; *See also Napier*, 2000 WL 44864,

---

[5] Notably, Plaintiff never asserts that she did not receive this notice. Indeed, her filing of a waiver request in September 1997 suggests that she did receive some form of notice. She merely points out its absence from the record.

at *4 (holding that the ALJ properly extended greater weight to an unauthenticated SSA waiver determination because plaintiff failed to challenge the authenticity of the document at the initial hearing).

Here, the waiver determination and Master Beneficiary Record showed an overpayment of $29,280.10. Absent any challenge or contrary evidence whatsoever, and in view of Plaintiff's agreement as to the amount, the ALJ was entitled to rely on this figure.

Accordingly, the Court holds that the ALJ's finding of a $29,280.10 overpayment to Plaintiff has substantial support in the record.

### C.    Fault

The SSA must waive recovery of an overpayment if two statutory conditions are met. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506. First, the recipient must be without fault. 20 C.F.R. § 404.506. Second, recovery from the recipient must either defeat the purposes of Title II of the Social Security Act or otherwise be against equity and good conscience. *Id.* The recipient bears the burden of demonstrating that she meets the elements of this two pronged test. *Banuelos*, 165 F.3d at 1170. Therefore, Plaintiff bears the burden of proving that she was not at fault. *See id.*

Under Section 404(b), the recipient of a disability overpayment is at fault when the overpayment results from:

> (a)    An incorrect statement made by the individual which he knew or should have known was incorrect; or
>
> (b)    Failure to furnish information which he knew or should have known to be material; or

- 13 -

> (c)     With respect to the overpaid individual only, acceptance of
> a payment which he either knew or could have been expected to
> know was incorrect.

20 C.F.R. § 404.507; *Heins*, 22 F.3d at 159.

The fact that the SSA was at fault in causing an overpayment does not relieve the

recipient of fault. 20 C.F.R. § 404.507; *Napier*, 2000 WL 44864, at *4. Thus the fault inquiry

settles upon the actions of the recipient, regardless of the SSA's role in causing an overpayment.

20 C.F.R. § 404.507; *see also Bonner v. Chater*, No. 94-3471, 1995 WL 272665, at *3 (7th Cir.

May 9, 1995). In this case, the SSA shares much of the blame in causing the overpayments. The

SSA knew it was paying Plaintiff benefits that she was not entitled to as early as the November

1997 personal conference between Plaintiff and the claims representative. (R. at 81.) Yet the

SSA continued to pay Plaintiff until March 1999. (R. at 189.) Nevertheless, the SSA's mistakes

do not relieve Plaintiff of fault.

The ALJ determined that Plaintiff was not without fault and therefore denied Plaintiff's

request for waiver. He concluded that Plaintiff realized that she was receiving benefits to which

she was not entitled. (R. at 14.) In reaching that conclusion, the ALJ rejected as incredible

Plaintiff's testimony that she did not understand that her earnings disqualified her from receiving

benefits. Substantial evidence supports that determination.

When reaching a decision, the ALJ is entitled to make credibility determinations. This

Court must extend deference to such determinations; they will not be reversed unless "patently

wrong." *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel*,

207 F.3d 431, 435 (7th Cir. 2000)). However, an ALJ may not summarily assert that proffered

testimony or other evidence is or is not credible. *Id.* Instead, according to Social Security Ruling

96-7p, an ALJ must set forth the specific reasons for his credibility determinations. *Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002). The reasons must be logical and, ideally, should rest on objective factors rather than inarticulable subjective considerations. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

At the hearing, Plaintiff stated that she did not realize that her earnings impacted her disability benefits. Accordingly, she argues that she did not and could not have realized that her substantial gainful employment disqualified her from receiving benefits upon the completion of her trial work period and extended period of eligibility.

In rejecting this testimony as incredible, the ALJ first noted that Plaintiff had received past notices of overpayment on behalf of her children in 1995. (R. at 14.) He reasoned that, after receiving these notices, Plaintiff was aware that she was no longer entitled to benefits. In considering the sufficiency of the ALJ's conclusions, the reviewing court looks to the entire record. *Brewer*, 103 F.3d at 1390. Thus we also take notice of the November 19, 1997 conference between Plaintiff and the SSA claims representative at which time the representative and Plaintiff discussed her need to report work activity. (R. at 95.) Therefore, after the conference, Plaintiff must have been aware that she was no longer entitled to benefits because she had worked after the trial work period. Even after the conference, however, Plaintiff continued to accept payments from the SSA. Accordingly, the conference provides additional evidence that Plaintiff received payments that she knew she was not entitled to receive.

The ALJ's inquiry could not stop there, however, because when making the determination of fault the ALJ must also take into account any and all of the recipient's physical, mental, educational, or linguistic limitations. *See* 42 U.S.C. § 404(b); 20 C.F.R. § 404.507. Therefore,

in this case, the ALJ was also obligated to consider whether Plaintiff's disability affected her capacity to understand SSA communications informing her that any work activity disqualified her from receiving benefits after the conclusion of her trial work period.

The ALJ properly followed 20 C.F.R. § 404.507 by considering the effect of Plaintiff's disability on her capacity to understand the notices she received. First, the ALJ considered the fact that Plaintiff was on three forms of medication to treat her bipolar disorder. He then specifically rejected Plaintiff's contention that this medication, coupled with her illness, made her unable to understand the impact of her earnings on eligibility. The ALJ noted that Plaintiff has the ability to report her work activity to the SSA. (R. at 13, 25.) He recognized that Plaintiff has the mental capacity to obtain a GED and complete courses at the college level, even after the onset of her disability. More recently, Plaintiff worked at several jobs despite her impairment and while she was on medication. (R. at 89-91, 120-22.) Although the record does not disclose the nature and responsibilities of Plaintiff's employment, the ALJ reasoned that the mere ability to maintain such employment provided some additional evidence that Plaintiff could function normally at least some of the time. According to the ALJ, Plaintiff also evinced an understanding of the overpayment notices by quickly responding to them with a request for waiver, which she repeated several times. Finally, Plaintiff testified that she did not continually take her medication because she felt better at times. The ALJ thus reasoned that, at times, Plaintiff's medication improved her condition enough for Plaintiff to understand SSA notices and understand that her work activity disqualified her from eligibility.

The ALJ also briefly mentioned Plaintiff's "apparent occasional relapses into substance and alcohol abuse." Plaintiff argues that the ALJ manufactured the allegation out of whole cloth

and used it to deny her waiver. In fact, doctor's notes in the July 5, 1996, disability review lend some support to this passing reference. (R. at 104.) More importantly, however, the ALJ did not use this evidence against Plaintiff. Instead, the ALJ considered whether substance or alcohol abuse might have compounded Plaintiff's asserted inability to understand the overpayment notices and her eligibility. In other words, the ALJ considered, but ultimately rejected, the possibility that substance abuse might have *relieved* Plaintiff of fault and entitled her to a waiver. The Court need not consider whether substantial evidence, specifically, the doctor's notes, supports the ALJ's apparent conclusion (or possibly assumption for the sake of argument) that Plaintiff had engaged in past substance abuse because that conclusion actually militated *against* his ultimate decision to deny waiver of recovery.

Finally, Plaintiff argues that the results of the July 5, 1996 medical review determination of disability confused her into thinking she was still entitled to benefits. Plaintiff received a July 11 letter informing her that the review had determined that she was still disabled. However, the letter did not inform Plaintiff that she was automatically entitled to additional disability benefits regardless of her employment, nor did it tell her to expect additional checks. The letter simply stated that her "status as a Social Security beneficiary is unchanged." (R. at 190.) Of course, by July 1996 Plaintiff had received notice of overpayment on her children's behalf and filed several requests for waiver. The ALJ therefore concluded that Plaintiff understood that she could not collect benefits while working. Accordingly, the statement that her status remained unchanged is irrelevant: at that time Plaintiff already knew that her "status" as a disability beneficiary included a prohibition against collecting benefits while she worked.

More importantly, the letter itself reinforces, albeit obliquely, the fact that a claimant who is disabled cannot recover benefits while working. The letter instructed Plaintiff to promptly report any changes in her work status, improvements in her condition, and receipt of workers' compensation, all of which is information that affects a beneficiary's eligibility. The letter states that such "information will be used to decide if you still meet the requirements for continued eligibility under the special provisions of the Social Security Act." (R. at 190.) The letter also reminded Plaintiff that she had completed her trial work period. (Id.) In summary, nowhere does this letter inform Plaintiff that she would continue to receive payment despite her continued employment. The letter did remind her that her earnings affected her eligibility, which the ALJ found that Plaintiff already knew.

In addition, if Plaintiff had any remaining doubts after receiving this letter, these doubts must have been put to rest at the November 19, 1997 personal conference. At this conference, the SSA claims representative denied Plaintiff's request for waiver and reiterated the fact that her earnings disqualified her from eligibility. The conference made it clear that she was not entitled to any checks she might receive and Plaintiff had even begun reporting her work activity shortly before the conference. (R. at 191.) Yet she continued to accept payments until March 1999 despite this knowledge. (R. at 171, 189.) Her continued acceptance of payments during this period, when she knew she was not entitled to benefits, suggests that she may have also known that she was not entitled to benefits earlier, during the time in which she claimed to be confused by the letter, and accepted the SSA's payments anyway.

The ALJ's opinion could have been improved by explicitly discussing this letter in some detail. The Court is mindful of the ALJ's obligation to "build an accurate and logical bridge

between the evidence and the result." *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Yet the ALJ need not provide a written evaluation of every piece of evidence or testimony. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). Moreover, the Court is itself obligated to give the ALJ's opinion "a commonsensical reading rather than nitpicking at it." *See Johnson*, 189 F.3d at 564.

Here, the ALJ has listed several good reasons for his determination that Plaintiff was capable of understanding the fact that she was not entitled to benefits. A commonsense reading of the opinion must conclude that, based on this determination, the ALJ implicitly rejected Plaintiff's argument that the July 1996 letter confused her into thinking that she was entitled to the benefits that she received.

The substantial evidence discussed above supports the ALJ's determination that Plaintiff had the ability to know and did know that she was accepting payments to which she was not entitled. In light of this substantial evidence, the ALJ rejected Plaintiff's contention that her disability and what she claimed were conflicting communications from the SSA rendered her incapable of understanding that her employment made her ineligible to receive disability payments. Therefore, the Court holds that substantial evidence supports the ALJ's determination that Plaintiff was not without fault in causing the overpayment.

Because the ALJ's findings on the issues of overpayment and Plaintiff's fault are supported by substantial evidence in the record, the final decision of the Commissioner denying waiver of recovery is affirmed.

### V.  Conclusion

For the above reasons, the Court affirms the Commissioner's final decision.  The

Commissioner's motion for summary judgment is granted, and Plaintiff's motion for summary

judgment is denied.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated:  April 26, 2004.

Copies have been mailed to:

ASHLEY S. ROSE, Esq.                    MALINDA HAMANN, Esq.
Law Offices of Ashley S. Rose        Special Assistant United States Attorney
799 Roosevelt Road                      200 West Adams Street
Building 6, Suite 104                  30th Floor
Glen Ellyn, IL  60137                  Chicago, IL  60606

Attorney for Plaintiff                  Attorney for Defendant